UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEROY MOORE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV757 CDP |
| ) | |
| DAIMLERCHRYSLER ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Leroy Moore was discharged from his employment with DaimlerChrysler on December 20, 2005, after an investigation into a sexual harassment complaint filed against him by a co-worker. Moore brings state-law claims of wrongful discharge, workers' compensation retaliation, and violation of Missouri's service letter statute. DaimlerChrysler seeks summary judgment on all counts, arguing that Moore cannot demonstrate any genuine issue of material fact precluding judgment as a matter of law.

I find that Moore's state law wrongful discharge claim is preempted by section 301 of the Labor Management Relations Act. Additionally, his workers' compensation retaliation claim fails because there is no evidence indicating that Moore's filing of a claim for workers' compensation was the exclusive cause of his discharge. Finally, Moore has suffered no compensable damages resulting

from the service letter he received, and the undisputed facts show that the statements in the letter are true. I will grant summary judgment for DaimlerChrysler and dismiss plaintiff's complaint.

## I. Background

Plaintiff Leroy Moore began working for DaimlerChrysler in May of 1998 as a full-time, hourly production worker at its plant in New Castle, Indiana. Moore was transferred to the St. Louis North Plant in 2004, where he became a member of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) Local Union No. 136. A collective bargaining agreement (CBA) exists between DaimlerChrysler and the UAW.

DaimlerChrysler has standards of conduct and policies that govern the conduct of all employees, including a workplace discrimination and harassment prevention policy which specially prohibits sexual harassment. Violations of the policy or standards are grounds for disciplinary action, up to and including discharge. The CBA also prohibits sexual harassment and allows for appropriate discipline, including discharge, in the event that it occurs. Under the CBA, when a complaint of sexual harassment is received, an investigation is to occur. Once the investigation is concluded, local management in conjunction with corporate officials, determine the appropriate action to be taken. The CBA contains a

grievance procedure which includes four steps and then concludes with a final appeal to the Appeal Board.

In the beginning of April 2005, Moore injured his right ankle while at work. Moore was seen by the medical department and had an x-ray which indicated that there was no fracture. DaimlerChrysler notified the Missouri Division of Workers' Compensation of the injury on the day it occurred by filing a Report of Injury. Moore returned to work, after taking one day off, and for the following three or four weeks, he was assigned a job that could be done while sitting down.

One day in early November of 2005 Moore stopped the production line because one of his tape dispensers was broken and he was having trouble keeping up with the trucks on the line. Part of his job as a passenger-side heat shield installer was to put eight pieces of tape on the underside of each truck. Two tape dispensers provide the tape and one of them was not working on this particular day. Moore felt that he could not keep up because his ankle injury from the previous April was still healing. Moore was told to continue to do his job with a single tape dispenser and he refused.

On November 23, 2005, a female co-worker of Moore's, Genora English, alleged that Moore inappropriately touched her buttocks while passing her by on a production break. An investigation was performed by Patrick Peyton, a labor relations representative, and Angela McNeal, civil rights chairperson for UAW

Local 136. English signed a statement reiterating her allegation. Another co-worker, Julie Gant, was also interviewed by the investigative team and signed a statement saying that she saw Moore grab English's buttocks. A third co-worker, Marvin Nash, told the team that English was visibly upset after the production break. Moore was also interviewed. He denied touching English. Moore was suspended later that day pending investigation of English's allegation. Days later, English and Gant were re-interviewed and they provided the same information again.

On December 19, 2005, in a meeting with plant labor relations, human relations, corporate diversity, corporate union relations, human resources and DaimlerChrysler's general counsel, the investigation into English's allegations was discussed and the decision was made to discharge Moore. On the same day, Moore filed a Claim for Compensation with the Missouri Division of Workers' Compensation. Moore's suspension was converted to a discharge on the following day, December 20, 2005.

On January 6, 2006, UAW Local 136 filed a grievance on behalf of Moore, demanding that the unjust discharge be removed from his record and that he be paid for lost wages and benefits. The grievance has been denied at the first four stages but remains pending at the final appeal board level.

## II. Discussion

### 1. Legal Standards on Summary Judgment

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249.

### 2. State Law Wrongful Discharge Claim

Moore states in his amended complaint that the contract for employment between the parties was the CBA, which was entered into by Moore, the UAW, and DaimlerChrysler. Moore alleges that DaimlerChrysler breached the CBA by failing to fully investigate the accusations of sexual harassment made against

Moore, terminating Moore without first completing a fair and full investigation, and terminating Moore without cause. DaimlerChrysler asserts that this state-law claim for wrongful discharge is preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and should therefore be dismissed. Moore responds that his state-law claim is independent of the CBA and that resolution of the claim does not require construing the CBA.

The Supreme Court has held that section 301 of the LMRA preempts state law claims that allege a violation of a provision of a collective bargaining agreement. Local 174, Teamsters, Chaukfeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962). For example, state law claims that are "inextricably intertwined with consideration of the terms of the labor contract" or "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" are preempted by section 301. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 220 (1985); Oberkramer v. IBEW-NECA Service Center, Inc., 151 F.3d 752, 756 (8th Cir. 1998). However, when a state law claim is independent of the CBA – such that resolution of the claim does not require construing the CBA – there is no preemption. St. John v. Int'l Ass'n of Machinists & Aerospace Workers, 139 F.3d 1214, 1217 (8th Cir. 1998).

In this case, Moore alleges that DaimlerChrysler breached the employment contract between the parties. The employment contract that he alleges was breached is the CBA. Moore's state-law claim of wrongful discharge is inextricably intertwined with and substantially dependent upon analysis of the CBA. This claim is preempted by section 301 of the LMRA and therefore it will be dismissed. See Oberkramer, 151 F.3d at 756 (finding breach of employment contract claim preempted and properly dismissed).

DaimlerChrysler also argues that Moore fails to state a claim under section 301 of the LMRA. Because Moore's amended complaint contains no claim for relief under section 301 of the LMRA, I need not decide this issue. In addition, I need not construe the CBA's provisions on grievance exhaustion because this claim is preempted.

### 3. Workers' Compensation Retaliation Claim

Moore also brings a claim under Missouri Revised Statute § 287.780, which prohibits an employer from discharging or discriminating against any employee for exercising any of the rights granted by the Missouri's Workers' Compensation Act. To establish a claim for retaliatory discharge, Moore must prove: (1) he was employed by DaimlerChrysler before the injury; (2) he exercised a right granted by the Missouri Workers' Compensation Act; (3) DaimlerChrysler discharged

him; and (4) there is an exclusive causal relationship between his exercise of right and his discharge. Crabtree v. Bugby, 967 S.W.2d 66, 70 (Mo. 1998).

There is no dispute here that Moore was employed prior to the injury and that DaimlerChrysler discharged him. The issues before the Court are what right Moore exercised and whether his exercise of that right was the exclusive cause of his discharge. In his amended complaint, Moore alleges that DaimlerChrysler discharged him, under the pretext of sexual harassment allegations, in retaliation "for having engaged in activity protected by Workers' Compensation Law by refusing to continue production without adequate materials that could endanger the plaintiff's health and prevent healing to his ankle." Moore is referring to the day in early November 2005 when he refused to continue working with a healing ankle and broken tape dispenser. However, in Moore's brief in opposition to summary judgment, he asserts both his right "to perform his duties without compromising his safety and well-being" and his right to file a claim for workers' compensation. Because it is unclear which of these two exercised rights Moore is alleging to be the exclusive cause of his discharge, I will consider both.

Moore argues that in November 2005 his physical activity was limited because his ankle was still healing from the April injury, and that the continuous walking up a steep ramp endangered his health and recovery. Given his health condition and the equipment malfunction, he alleges that his refusal to continue

working was justified under Mo. Rev. Stat. § 287.140(2). This provision of the Missouri's Workers' Compensation Act pertains to the sufficiency of employer-provided medical care and other services for injuries compensable under the Act. By the plain language of section 287.140(2), if there is reasonable grounds for believing that the life, health, or recovery of the employee is endangered by insufficient medical services provided by an employer, a change in the employee's physician, surgeon, hospital or other required service can be ordered by the Missouri Division of Workers' Compensation or by the Commission. Mo. Rev. Stat. § 287.140(2). This provision does not support Moore's argument that the Act entitled him to refuse to perform his job out of concern for his own safety and well-being. Moore points to no other provision of the Act, nor does there appear to be such a provision, that grants him the right to discontinue working. Moore has no cause of action for retaliatory discharge based on his alleged right to refuse to work.

Despite these initial allegations, Moore's brief in opposition focuses on filing a workers' compensation claim as the right he exercised under the Act. The filing of a workers' compensation claim is a right granted under the Act which qualifies as an element of a retaliatory discharge claim. Henderson v. St. Louis Housing Authority, 605 S.W.2d 800, 803 (Mo. Ct. App. 1979) (affirms finding of retaliatory discharge based on filing of workers' compensation claim). It is

undisputed that Moore filed a claim for compensation with the Missouri Division of Workers' Compensation. The claim form was received by the Division on December 19, 2005, one day before Moore was discharged. The fact that a discharge follows the filing of a compensation claim does not alone prove a cause of action for retaliatory discharge. Hopkins v. Tip Top Plumbing & Heating Co., 805 S.W.2d 280, 284 (Mo. Ct. App. 1991). Moore must prove a demonstrable exclusive causal relationship between his filing of the workers' compensation claim and his discharge. Id.

If the filing of the claim was the real reason that Moore was discharged, DaimlerChrysler must have known about the claim almost immediately after it was received by the Missouri Division. The notice of the claim sent to DaimlerChrysler by the Division was dated January 4, 2006, fifteen days after Moore was discharged. The affidavit from Patrick Peyton, who lead the investigation into the sexual harassment charges against Moore, stated that he was never aware of Moore's workers' compensation claim during the investigation, suspension, and discharge of Moore. Moore has presented no evidence to the contrary.

Although Moore was discharged one day after he filed his claim for compensation with the state agency, the sexual harassment complaint against him was filed almost a month before his discharge. Moore suggests that

DaimlerChrysler took advantage of the opportunity of the pending harassment complaint to perform a one-sided investigation, conclude that he did it, and discharge him. However, the investigation was performed before the claim was even filed. The investigation was complete and the decision to discharge was actually made the same day as the claim filing.

Not only does the timing of the events indicate that there is no causal connection between the filing of the claim and the discharge, there is certainly no proof that the filing of the claim was the <u>exclusive</u> cause of the discharge. Moore submits no evidence and makes no argument, beyond mere speculation, that DaimlerChrysler's real reason for discharging him was the filing of his compensation claim. The only evidence submitted by Moore is evidence suggesting that he did not inappropriately touch Genora English. However, even if Moore could prove that he did not commit the sexual harassment alleged by English, he has no evidence linking his compensation claim to his discharge. There is nothing indicating that the claim filing was the actual and exclusive cause of the discharge.

In addition, if an employer had a valid, non-pretextual reason for discharge, the plaintiff cannot prove that the filing of a workers' compensation claim was the exclusive cause of his discharge. <u>Bloom v. Metro Heart Group of St. Louis, Inc.</u>, 440 F.3d 1025, 1029 (8th Cir. 2006). DaimlerChrysler asserts that its reason for

discharge of Moore was the sexual harassment complaint received from Genora English on November 23, 2005, and the subsequent investigation which found the complaint to be true.

The evidence submitted by Moore focuses on whether or not he commited the alleged sexual harassment. He submits evidence questioning English's faithfulness in marriage and suggesting that she is promiscuous and therefore cannot be believed. He submitted a three-page statement which he argues he gave to a union representative on November 30, 2005, on the background of his relationship with English and a list of witnesses to the incident. DaimlerChrysler denies receiving a copy of the statement until after Moore's discharge, and Moore has not presented any evidence to contradict this. Moore also submits testimony by affidavit from a co-worker who witnessed the incident and stated that Moore did not grab English's buttocks. In her deposition testimony Julie Gant, who previously stated that she witnessed the incident, stated both that she saw the inappropriate touching, but also that English was facing her, which Moore argues shows that Gant could not have seen what happened. However, none of this evidence was before the investigation team and other DaimlerChrysler employees when the decision to discharge Moore was made. This Court can not presume to know whether DaimlerChrysler would have made the same decision to discharge had it known all the evidence submitted by Moore. It is not the Court's role to

determine this and more importantly, it does not matter. Although Moore's evidence may question the validity of the investigation's findings, it does not begin to demonstrate that Moore's filing of a compensation claim was the exclusive cause of his discharge.

Moore has made no argument nor brought forth any evidence that suggests that DaimlerChrysler pretextually found that the sexual harassment claim was true in order to fire Moore. In fact, Moore states the opposite in a sworn, state-court petition for defamation that he filed against English and Gant based on the November 23, 2005, complaint of sexual harassment. In that pleading Moore states that his "reputation was damaged in the workplace resulting in management and coworkers' belief that the plaintiff had committed the immoral act against English." Moore admits that DaimlerChrysler believed that he committed the act of sexual harassment. This is inconsistent with his allegation of pretext.

The timing and circumstances of events in this case do not indicate a causal connection between the filing of Moore's workers' compensation claim and his discharge. Nor is there any reason to believe that DaimlerChrysler's discharge of Moore for sexual harassment was not a valid, non-pretextual reason. There is substantial evidence demonstrating that the filing of Moore's claim for workers' compensation was <u>not</u> the exclusive cause of his discharge. There are no genuine

issues of material fact in dispute as to Moore's claim of retaliatory discharge under the Missouri Workers' Compensation Act. Therefore this claim is dismissed.

### 4. Missouri Service Letter Statute Claim

In the third count of the amended complaint, Moore alleges that DaimlerChrysler violated the Missouri service letter statute, Mo. Rev. Stat. § 290.140, by issuing a service letter that falsely stated his reason for discharge. The service letter statute requires that a corporate employer, upon request from an ex-employee, provide a letter "setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and <u>truly stating</u> for what cause, if any, such employee was discharged or voluntarily quit such service." Mo. Rev. Stat. § 290.140(1) (emphasis added).

DaimlerChrysler argues that it is entitled to summary judgment on the issue of damages under the service letter statute. In Moore's prayer for relief on this count, he requests "compensatory and punitive damages, attorney fees and costs, and any other relief available to the plaintiff under the law, and for such other Orders and awards that this Honorable Court deems." However, the Missouri service letter statute is very clear on what type of damages are recoverable under specific circumstances:

> Any corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory <u>but not punitive damages</u> but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal

and punitive damages; but <u>no award of punitive damages under this section shall be based upon the content of any such letter</u>.

Mo. Rev. Stat. § 290.140(2) (emphasis added).

In this case, Moore does not deny that he received a service letter from DaimlerChrysler, but he argues that the letter's statement of the cause for his discharge is not true. The letter stated:

> As you are aware, a complaint of sexual harassment was filed against you. The complaint has been fully investigated by Plant Human Resources and reviewed by the Corporate Diversity Office. Based on your inappropriate behavior, you were terminated by DaimlerChrysler effective 12/20/05.

Because Moore is not alleging that DaimlerChrysler did not issue the requested service letter, he is not entitled to punitive damages. <u>Jasperson v. Purolator Courier Corp.</u>, 765 F.2d 736, 741 (8th Cir. 1985) (finding that only a failure to issue a service letter can support punitive damages); <u>Hendrix v. Wainwright Industries</u>, 755 S.W.2d 411, 413 (Mo. Ct. App. 1988) (holding that any claim for punitive damages is barred as a matter of law when an employee is challenging the substance of a service letter). Instead, in the event that Moore could prove the falsity of the service letter, the most he would be able to recover is compensatory or actual damages. <u>See</u> <u>Hendrix</u>, 755 S.W.2d at 414 (<u>citing</u> <u>Stiffelman v. Abrams</u>, 655 S.W.2d 522, 531 (Mo. 1983) ("[a]ctual damages are compensatory and are measured by the loss or injury sustained.")).

To recover actual damages under the Missouri service letter statute, Moore must show: (1) that on or about an approximate date the plaintiff was either refused employment or hindered in obtaining such employment; (2) that the refusal or hinderance was caused by the absence or inadequacy of the service letter; (3) that the position the plaintiff had difficulty obtaining was actually open; and (4) the salary rate of that position. Jasperson, 765 F.2d at 742 (citing Labrier v. Anheuser Ford Inc., 621 S.W.2d 51, 57 (Mo. 1981)).

Moore stated in a deposition that he has neither shown the service letter to any prospective employers nor has anyone with whom he applied for a job asked to see the letter. If no potential employers saw or asked to see the service letter then Moore cannot prove that the letter was the cause of his inability to find employment. Hendrix, 755 S.W.2d at 413 (citing Kling v. Professional Care Center, Inc., 735 S.W.2d 168, 169 (Mo. Ct. App. 1987)). Moore cannot prove the second element necessary for actual damages. Summary judgment is proper on a service letter claim when the employee did not sustain any compensable damages. Hendrix, 755 S.W. 2d at 414.

Additionally, Moore cannot meet his burden of proof on this claim. Although an employee need not plead or prove the actual or true reasons for his discharge, he does have the burden of proving that the employer's stated reason for discharge was not true. Bliven v. Brunswick Corp., 639 S.W.2d 610, 615 (Mo.

Ct. App. 1982). The issue here is not whether Moore actually sexually harassed English, but whether DaimlerChrysler told the truth when it said in the service letter that it fired Moore because it believed that he did commit the harassment. Jasperson, 765 F.2d at 741. Moore admits in his sworn state court pleading for defamation against English and Gant that DaimlerChrysler believed that he committed the act of sexual harassment.

### III. Conclusion

The undisputed evidence shows that Moore cannot recover on any of his claims. His wrongful discharge claim is inextricably intertwined with and substantially dependent upon analysis of the collective bargaining agreement. Therefore this claim is preempted by section 301 of the LMRA and will be dismissed. Moore's claim of retaliation under the Missouri Workers' Compensation Act fails because Moore has no evidence that the filing of workers' compensation claim was the exclusive cause of his discharge. There is no genuine issue for trial. Finally, Moore suffered no compensable damages due to the service letter and he admits that DaimlerChrysler believed he committed the act of sexual harassment, therefore, he has no cause of action under the Missouri service letter statute. DaimlerChrysler's motion for summary judgment will be granted and this case shall be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant DaimlerChrysler Corporation's motion for summary judgment [#30] is GRANTED.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2007.